**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MAJED M. ALTHIABAT,

      **Plaintiff,**

      **v.**                                      **Civil Action 13-788 (JMF)**

HOWARD UNIVERSITY *et al.*,

      **Defendants.**

**MEMORANDUM OPINION**

This matter is before the Court for all purposes. Currently pending and ready for review is defendants' <u>Motion to Dismiss Or, in the Alternative, For Summary Judgment</u> [#39]. For the reasons stated below, the motion will be granted and plaintiff's case will be dismissed in its entirety.

**I.      Factual Background**

There is no genuine issue as to the following facts:

1. Plaintiff became a student in the Department of Political Sciences Ph.D. program (hereinafter "the Program") at Howard University (hereinafter "Howard") in the fall semester of 2002. [#10] ¶ 6.

2. Plaintiff was dismissed from the Program in 2005 and then readmitted in 2010. <u>Id.</u> ¶ 7.

3. After his readmission, plaintiff received a letter from Howard placing a limit on the time by which plaintiff had to be admitted to candidacy — plaintiff was to complete his requirements by the fall semester of 2012. <u>Id.</u> ¶ 10,

4. Plaintiff failed to complete the necessary requirements to be advanced to candidacy by that time. <u>Id.</u> ¶ 12.

5. Plaintiff acknowledges that Howard extended this time for a full year to the fall semester of 2013. [#10] ¶ 13.

6. In light of plaintiff's lengthy matriculation, plaintiff's failure to advance to the candidacy during his 10-year attempt to complete the Program, and Howard's multiple accommodations and extensions to permit plaintiff to compete the Program, Howard sent plaintiff a letter dated April 8, 2013. [#10] ¶ 14.

7. That letter advised plaintiff that he was being dismissed from the Program as of the end of the spring semester of 2013 "due to his inability to perform satisfactorily at the graduate level." Id.

8. Less than a month later, Howard adjusted its position and sent plaintiff another letter dated May 6, 2013 (hereinafter "May Letter"). Id. ¶ 16.

9. The May Letter clarified that the Spring semester of 2013 included the summer 2013 session, required plaintiff to pay in full his past accumulated balance of tuition and fees in the amount of $17,433.00 by May 17, 2013 before he could enroll for any summer courses and defend his dissertation, and further required plaintiff to defend his dissertation by July 27, 2013, lest he be immediately dismissed from the Program. Id.; [#10-3] at 1.

10. Plaintiff does not dispute that he owes Howard the debt of $17,433.00. [#10] ¶¶ 13, 18, 22.

11. Pursuant to the Howard University Student Handbook for 2012-2013, all tuition and fees for the Fall semester of 2012 became due in full as of July 1, 2012, all tuition and fees for the Spring semester of 2012 became due in full as of December 21, 2012. [#39-1] at 2.

12. Additionally, the Student Reference Manual effective Spring of 2012, includes a section entitled "Student Agreement to Accept Financial Terms and Conditions of Attendance at Howard University" (hereinafter "the Agreement"). [#39-2] at 2.

13. Pursuant to the Agreement, each student at Howard specifically "understand[s], acknowledge[s], and agree[s]" that "[b]y registering for classes at Howard University (University), [he or she] agree[s] to assume total and complete financial responsibility for all charges billed to [his or her] student account including, but not limited to: tuition, fees, housing, meals, books, health insurance, returned checks, parking and library fines." Id.

14. Further, each student at Howard specifically "understand[s], acknowledge[s], and agree[s]" that "the University is advancing value to [him or her] in the form of educational services and that [his or her] right to register for any class is expressly conditioned upon [his or her] agreement to pay these student obligations. [He or she] further understand[s] that [he or she] will be prohibited from registering for any class until [his or her] student account reflects a zero balance." Id.

15. Finally, each student at Howard specifically "understand[s], acknowledge[s], and agree[s] that "[i]n the event [his or her] student account is declared to be in default, [he or she] understand[s] the University may exercise any remedy allowed by law, including one or more of the following, without notice or demand (except as required by law):

   • The University may declare the principal balance plus any late fees, fines or penalties immediately due and payable in full.

   • The University may hire a third-party to collect the debt." Id.

16. Despite the May Letter, plaintiff failed to pay in full his outstanding balance of fees and tuition on or before May 17, 2013. [#39] ¶ 16.

17. As a result, plaintiff could not, and did not, enroll in the summer 2013 session in order to complete the additional one-credit course to satisfy the credit-hour requirements of the Program. <u>Id.</u> ¶ 17.

18. Also as a result, Plaintiff could not, and did not, enroll in the summer 2013 session in order to defend his dissertation. <u>Id.</u> ¶ 18.

19. Consequently, plaintiff was dismissed from the Program without completing his degree. <u>Id.</u> ¶ 19.


## II.     Standard for Summary Judgment

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).


## III.    Breach of Contract Claim

A contract requires an exchange of promises for some consideration. Most fundamentally, the Restatement of the Law of Contracts (Second) provides that: "An agreement is a manifestation of mutual assent on the part of two or more persons." RESTATEMENT (SECOND) OF CONTRACTS § 3 (1981).  A bargain is an agreement to exchange promises or to exchange a promise for a performance or to exchange performances. <u>Id.</u>  It then follows that "the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." <u>Id.</u> § 17.

It is impossible to review the course of dealings between Howard and plaintiff and find in it a contract between plaintiff and Howard that absolutely required Howard to permit the plaintiff to finish his doctorate irrespective of any other consideration.  To the contrary, if a contract were to be implied between plaintiff and Howard, such a contract would permit the plaintiff to matriculate *only* if he met the academic requirements and paid his tuition when it was due. Plaintiff unquestionably failed to meet the latter condition and thereby breached the only contract between him and Howard that could be implied from their dealings.  Once plaintiff breached, he relieved Howard of its obligation to permit him to matriculate.  It is therefore Howard that may complain of a breach, not plaintiff.  Therefore, plaintiff's contract claim fails.

## IV.    Constitutional Claims

Plaintiff also asserts a claim premised on the due process and equal protection clauses of the U.S. Constitution. [#28], at 3.  However, as Judge Lamberth concluded in Remy v. Howard University, 55 F. Supp. 2d 27 (D.D.C. 1999), Howard University is not a state actor subject to constitutional restrictions. Id. at 28-29.  Therefore, plaintiff's constitutional claims fail as well.

## V.    Intentional Infliction of Emotional Distress

The requirements for establishing the tort of intentional infliction of emotional distress are demanding.  The Chief Judge has stated:

> To recover on a claim for intentional infliction of emotional distress, a plaintiff must demonstrate extreme and outrageous conduct which intentionally or recklessly cause[d] severe emotional distress.  Liability will be imposed only for conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Thompson v. Jasas Corp., 212 F. Supp. 2d 21, 27-28 (D.D.C. 2002) (internal citations and quotations omitted).

Plaintiff's best argument – that Howard would not let him continue to matriculate until he paid his tuition – cannot possibly meet this demanding standard.  Defendant is entitled to summary judgment on the intentional infliction of emotional distress claim as well.

**VI.     Claim Against Dean Harris**

Since the contractual and intentional infliction of emotional distress claims fail on their merits as to Howard, they fail for the same reason as to Dean Harris. There is, however, one additional possible theory of recovery that should be explored given plaintiff's *pro se* status, and the policy of construing *pro se* filings liberally.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976). An action would lie against an individual who subjects a person to the deprivation of "any rights, privileges, or immunities secured by the Constitution and laws…" 42 U.S.C. § 1983.  But, the person sued must have acted "under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia…" Id.  Clearly Dean Harris never acted under color of any statute when he took the actions about which Plaintiff complains. Thus, an action under 42. U.S.C. section 1983 would fail as well.

**VII.    Conclusion**

There is no genuine issue of material fact and therefore the defendants are entitled to judgment as a matter of law.  An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE